CAMPEAU GOODSELL SMITH, L.C.
SCOTT GOODSELL, #122223
KARI SILVA BOWYER, #257033
440 N. 1st Street, Ste 100
San Jose, California   95112
Telephone:   (408) 295-9555

ATTORNEYS FOR DEBTORS

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

In Re:

ROBERT LAWRENCE HUGHES

Debtor.

)
)  Case No: 11-32611
)
)
)
)  CHAPTER 11
)
)
)  Date:    July 6, 2012
)  Time:    11:00am
)  Room:   22
)  Hon. Dennis Montali
)
)  235 Pine Street, 19th Floor
)  San Francisco, CA 94104
)
)
)
)
)
)
)

[PROPOSED] COMBINED PLAN OF REORGANIZATION

AND [APPROVED] [TENTATIVELY APPROVED] DISCLOSURE STATEMENT

(JUNE 20, 2012)

United States Bankruptcy Court
Northern District of California

In re:                                    Case No. 11-32611DM
                                          Chapter 11

ROBERT LAWRENCE HUGHES

            Debtor

_____

[PROPOSED] COMBINED PLAN OF REORGANIZATION
AND [APPROVED] [TENTATIVELY APPROVED] DISCLOSURE STATEMENT
(JUNE 20, 2012)

INTRODUCTION

    This is Debtor's Combined Chapter 11 Plan of Reorganization
and Disclosure Statement (the Plan).  The Plan identifies each
known creditor by name and describes how each claim will be
treated if the Plan is confirmed.

    Part 1 contains the treatment of creditors with secured
claims; Part 2 contains the treatment of general unsecured
creditors: a prorata portion of $120,011.00, likely to result in
a .1019% recovery of allowed claims in a lump sum payment on or
before June 30, 2014.  Taxes and other priority claims would be
paid in full, as shown in Part 3.

    Most creditors (those in impaired classes) are entitled to
vote on confirmation of the Plan.  Completed ballots must be
received by Debtor's counsel, and objections to confirmation
must be filed and served, no later than [date].  The court will
hold a hearing on confirmation of the Plan on [date] at [time].

    Attached to the Plan are exhibits containing financial
information that may help you decide how to vote and whether to
object to confirmation.  Exhibit 1 includes background
information regarding Debtor and the events that led to the
filing of the bankruptcy petition and describes significant
events that have occurred during this Chapter 11 case.  Exhibit
2 contains an analysis of how much creditors would likely
receive in a Chapter 7 liquidation.  Exhibit 3 shows Debtor's
monthly income and expenses.  Exhibit 4 describes how much
Debtor is required to pay on the effective date of the plan.

Case: 11-32611   Doc# 50   Filed: 06/20/12   Entered: 06/20/12 11:44:05   Page 2 of
18

Whether the Plan is confirmed is subject to complex legal rules that cannot be fully described here. You are strongly encouraged to read the Plan carefully and to consult an attorney to help you determine how to vote and whether to object to confirmation of the Plan.

If the Plan is confirmed, the payments promised in the Plan constitute new contractual obligations that replace the Debtor's pre-confirmation debts. Creditors may not seize their collateral or enforce their pre-confirmation debts so long as Debtor performs all obligations under the Plan. If Debtor defaults in performing Plan obligations, any creditor can file a motion to have the case dismissed or converted to a Chapter 7 liquidation, or enforce their non-bankruptcy rights. Debtor will be discharged from all pre-confirmation debts (with certain exceptions) if Debtor makes all Plan payments. Enforcement of the Plan, discharge of the Debtor, and creditors' remedies if Debtor defaults are described in detail in Parts 5 and 6 of the Plan.

**PART 1: TREATMENT OF SECURED CREDITORS**

**Creditor's Rights Remain Unchanged.**

These creditors' legal, equitable, and contractual rights remain unchanged with respect to the following collateral. The confirmation order will constitute an order for relief from stay. **These secured claims are not impaired and are not entitled to vote on confirmation of the Plan.**

| Class | Name of Creditor | Description of Collateral |
|-------|------------------|---------------------------|
| 1 | JP Morgan Chase | 623 Upland Rd., Redwood City, CA; second position with outstanding balance of $323,699.55 as of September 1, 2011. |
| 1 | JP Morgan Chase Bank, N.A | 2009 Subaru Tribeca, with an outstanding balance as of the petition date of $25,097.47; this amount has been reduced by regular payments made since the petition date |

Individual Chapter 11
Combined Plan & Disclosure Statement  -2-
May 4, 2012

**Debtor to Make Regular Payments and Pay Arrears Over Time.**

Debtor will pay the entire amount contractually due by making all post-confirmation regular monthly payments, and by paying all pre-confirmation arrears (including attorneys fees and late charges) with interest in 24 equal monthly payments of $300, due the [15th] day of the month, starting September 2012 ($7,200), the remaining arrears will be paid in equal payments of $667.00 for 96 months thereafter. To the extent arrears are determined to be other than as shown below, appropriate adjustments will be made in the number of payments.

Creditors in these classes may not repossess or dispose of their collateral so long as Debtor is not in material default under the Plan (defined in Part 6(b)). **These secured claims are impaired and entitled to vote on confirmation of the Plan.**

| Class | Name of Creditor | Collateral | Regular Monthly Payment | Estimated Arrears | Interest Rate on Arrears | Monthly Payment on Arrears |
|---|---|---|---|---|---|---|
| 2 | Deutsche Bank National Trust Company as trustee c/o JPMorgan Chase Bank | 623 Upland Rd., Redwood City, CA | 3,500 | 61,519 | 3.2% | $300 for 24 months; $667 for remaining 96 months |

**Property to be Sold.**

Debtor will sell the following collateral by June 30, 2014 paying secured creditors from the proceeds of the sale. Debtor will file a motion for approval of any such sale on 28 days notice to lien holders. Unless the court orders otherwise, a lienholder whose lien is not in bona fide dispute may credit bid the amount of its lien at the sale. Any deficiency claim is a general unsecured claim treated in Part 2.

Debtor will make the payments outlined above until the sale is complete.

Individual Chapter 11
Combined Plan & Disclosure Statement -3-
May 4, 2012

Creditors in these classes may not repossess or dispose of their collateral so long as Debtor is not in material default under the Plan (defined in Part 6(b)). **These secured claims are impaired and are entitled to vote on confirmation of the Plan.**

## PART 2: TREATMENT OF GENERAL UNSECURED CREDITORS

**Class 3(a). Small Claims.**

This class includes any creditor whose allowed claim is $500 or less, and any creditor in Class 2(b) whose allowed claim is larger than $ 500 but agrees to reduce its claim to $ $1,000. Each creditor will receive on the Effective Date of the Plan a single payment equal to the lesser of 10% of its allowed claim or 8% of $1,000.00.

Creditors in this class may not take any collection action against Debtor so long as Debtor is not in material default under the Plan (defined in Part 6(b)). **Claimants in this class are impaired and are entitled to vote on confirmation of the Plan, unless their claims are paid in full with interest on the Effective Date of the Plan.**

| Name of Creditor | Amount of Claim | Amount to be Paid |
|---|---|---|
| Franchise Tax Board | 332.40 | 26.59 |
| | | |
| | | |

**Class 2(b). [Other] General Unsecured Claims.**

Allowed claims of general unsecured creditors [not treated as small claims] (including allowed claims of creditors whose executory contracts or unexpired leases are being rejected under this Plan) shall be paid as follows:

**Pot Plan.** Creditors will receive a pro-rata share of a fund totaling $120,000, created by Debtor's sale of the Upland Property. Pro-rata means the entire amount of the fund divided by the entire amount owed to creditors with allowed claims in this class.

Individual Chapter 11
Combined Plan & Disclosure Statement  -4-
May 4, 2012

| Name of Creditor | Amount of Claim | Disputed Y/N | Estimated Amount to be Paid | Payment |
|---|---|---|---|---|
| American Express Co. | 9,892 | N | 1007.99 | July 2014 |
| Auerbach Sierra Meadows LLC | 504,048 | N | 51,362.49 | July 2014 |
| Betsy Haines | 300,000 | N | 30,570.00 | July 2014 |
| BofA Visa | 1,590 | N | 162.02 | July 2014 |
| Citibank | 1,797.00 | N | 183.11 | July 2014 |
| Darby Law Practice | 6,614.00 | N | 673.96 | July 2014 |
| Nevada Dept. of Taxation | 1,473.00 | N | 150.10 | July 2014 |
| Robin Miller | 2,500 | N | 254.75 | July 2014 |
| US Small Business Administration | 349,559 | N | 35,620.06 | July 2014 |

Creditors in this class may not take any collection action against Debtor so long as Debtor is not in material default under the Plan (defined in Part 6(b)). **This class is impaired and is entitled to vote on confirmation of the Plan.** Debtor has indicated below whether a particular claim is disputed.

**PART 3: TREATMENT OF PRIORITY AND ADMINISTRATIVE CLAIMS**

(a)  Professional Fees.
Debtor will pay the following professional fees in full on the Effective Date, or upon approval by the court, whichever is later.

| Name and Role of Professional | Estimated Amount |
|---|---|
| Campeau Goodsell Smith | $10,000.00 |
|  |  |

Professionals may not take collection action against Debtor so long as Debtor is not in material default under the Plan (defined in Part 6(b)). **Estate professionals are not entitled to vote on confirmation of the Plan.**

Individual Chapter 11
Combined Plan & Disclosure Statement  -5-
May 4, 2012

(b) Other Administrative Claims. Debtor will pay other allowed claims entitled to priority under section 503(b) in full on the Effective Date; except expenses incurred in the ordinary course of Debtor's business or financial affairs, which shall be paid when normally due and payable (these creditors are not listed below). All fees payable to the United States Trustee as of confirmation will be paid on the Effective Date; post-confirmation fees to the United States Trustee will be paid when due.

Administrative Creditors may not take any collection action against Debtor so long as Debtor is not in material default under the Plan (defined in Part 6(b)). **Administrative claimants are not entitled to vote on confirmation of the Plan.**

| Name of Administrative Creditor | Estimated Amount of Claim |
| --- | --- |
| None | |
| | |

(c) Tax Claims. Debtor will pay allowed claims entitled to priority under section 507(a)(8) in full over time with interest (at the non-bankruptcy statutory interest rate) in equal amortizing payments in accordance with section 511 of the Bankruptcy Code. Payments will be made quarterly, due on the 15th day of the quarter, starting September 2012. To the extent amounts owed are determined to be other than as shown below, appropriate adjustments will be made in the number of payments.

Priority tax creditors may not take any collection action against Debtor so long as Debtor is not in material default under the Plan (defined in Part 6(b)). **Priority tax claimants are not entitled to vote on confirmation of the Plan.**

| Name of Creditor | Estimated Amount of Claim | Statutory Interest Rate | Payment Amount | Number of Payments |
| --- | --- | --- | --- | --- |
| Franchise Tax Board | 512.20 | 3% | 36.80 | 15 |
| | | | | |

## PART 4: EXECUTORY CONTRACTS AND UNEXPIRED LEASES

(a) Executory Contracts/Unexpired Leases Assumed. Debtor

Individual Chapter 11
Combined Plan & Disclosure Statement  -6-
May 4, 2012

assumes the following executory contracts and/or unexpired
leases upon confirmation of this Plan and will perform all pre-
confirmation and post-confirmation obligations thereunder.
Post-confirmation obligations will be paid as they come due.

| Name of Counter-Party | Description of Contract/Lease | Estimated Total Cure Amount | Installment Amount | Number of Installments |
|---|---|---|---|---|
| None | | | | |
| | | | | |

(b) Executory Contracts/Unexpired Leases Rejected. Debtor
rejects the following executory contracts and/or unexpired
leases and surrenders any interest in the affected property, and
allows the affected creditor to obtain possession and dispose of
its property, without further order of the court. Claims
arising from rejection of executory contracts have been included
in Class 2 (general unsecured claims).

| Name of Counter-Party | Description of Contract/Lease |
|---|---|
| None | |
| | |

(c) Executory contracts and unexpired leases not specifically
assumed or rejected above will be deemed rejected.

**PART 5: DISCHARGE AND OTHER EFFECTS OF CONFIRMATION**

(a) Discharge. Debtor shall not receive a discharge of debts
until Debtor makes all payments due under the Plan or the court
grants a hardship discharge.

(b) Vesting of Property. On the Effective Date, all property
of the estate and interests of the Debtor will vest in the
reorganized Debtor pursuant to § 1141(b) of the Bankruptcy Code
free and clear of all claims and interests except as provided in
this Plan, subject to revesting upon conversion to Chapter 7 as
provided in Part 6(f) below.

(c) Plan Creates New Obligations. Except as provided in
Part 6(d), the obligations to creditors that Debtor undertakes
in the confirmed Plan replace those obligations to creditors
that existed prior to the Effective Date of the Plan. Debtor's

Individual Chapter 11
Combined Plan & Disclosure Statement  -7-
May 4, 2012

Case: 11-32611   Doc# 50   Filed: 06/20/12   Entered: 06/20/12 11:44:05   Page 8 of 18

obligations under the confirmed Plan constitute binding contractual promises that, if not satisfied through performance of the Plan, create a basis for an action for breach of contract under California law.  To the extent a creditor retains a lien under the Plan, that creditor retains all rights provided by such lien under applicable non-Bankruptcy law.

**PART 6: REMEDIES IF DEBTOR DEFAULTS IN PERFORMING THE PLAN**

(a)  Creditor Action Restrained.  The confirmed Plan is binding on every creditor whose claims are provided for in the Plan. Therefore, even though the automatic stay terminates on the Effective Date with respect to secured claims, no creditor may take any action to enforce either the pre-confirmation obligation or the obligation due under the Plan, so long as Debtor is not in default under the Plan, except as provided in Part 6(e) below.

(b)  Obligations to Each Class Separate.  Debtor's obligations under the Plan are separate with respect to each class of creditors.  Default in performance of an obligation due to members of one class shall not by itself constitute a default with respect to members of other classes.  For purposes of this Part 6, the holders of all administrative claims shall be considered to be a single class, the holders of all priority claims shall be considered to be a single class, and each non-debtor party to an assumed executory contract or lease shall be considered to be a separate class.

(c)  Material Default Defined.  If Debtor fails to make any payment, or to perform any other obligation required under the Plan, for more than 10 days after the time specified in the Plan for such payment or other performance, any member of a class affected by the default may serve upon Debtor and Debtor's attorney (if any) a written notice of Debtor's default.  If Debtor fails within 30 days after the date of service of the notice of default either: (i) to cure the default; (ii) to obtain from the court an extension of time to cure the default; or (iii) to obtain from the court a determination that no default occurred, then Debtor is in Material Default under the Plan to all the members of the affected class.

(d)  Remedies Upon Material Default.  Upon Material Default, any member of a class affected by the default: (i) may file and serve a motion to dismiss the case or to convert the case to Chapter 7; or (ii) without further order of the court has relief

Individual Chapter 11
Combined Plan & Disclosure Statement  -8-
May 4, 2012

from stay to the extent necessary, and may pursue its lawful remedies to enforce and collect Debtor's pre-confirmation obligations.

(e) Claims not Affected by Plan. Upon confirmation of the Plan, and subject to Part 5(c), any creditor whose claims are left unimpaired under the Plan may, notwithstanding paragraphs (a), (b), (c), and (d) above, immediately exercise all of its contractual, legal, and equitable rights, except rights based on default of the type that need not be cured under section 1124(2)(A) and (D).

(f) Effect of Conversion to Chapter 7. If the case is at any time converted to one under Chapter 7, property of the Debtor shall vest in the Chapter 7 bankruptcy estate to the same extent provided for in section 348(f) of the Bankruptcy Code upon the conversion of a case from Chapter 13 to Chapter 7.

(g) Retention of Jurisdiction. The bankruptcy court may exercise jurisdiction over proceedings concerning: (i) whether Debtor is in Material Default of any Plan obligation; (ii) whether the time for performing any Plan obligation should be extended; (iii) adversary proceedings and contested matters pending as of the Effective Date or specifically contemplated in this Plan to be filed in this court (see Part 7(f)); (iv) whether the case should be dismissed or converted to one under Chapter 7; (v) any objections to claims; (vi) compromises of controversies under Fed. R. Bankr. Pro. 9019; (vii) compensation of professionals; and (viii) other questions regarding the interpretation and enforcement of the Plan.

PART 7: GENERAL PROVISIONS

(a) Effective Date of Plan. The Effective Date of the Plan is the fifteenth day following the date of the entry of the order of confirmation, if no notice of appeal from that order has been filed. If a notice of appeal has been filed, Debtor may waive the finality requirement and put the Plan into effect, unless the order confirming the Plan has been stayed. If a stay of the confirmation order has been issued, the Effective Date will be the first day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

(b) Disputed Claim Reserve. Debtor will create a reserve for disputed claims. Each time Debtor makes a distribution to the

Case: 11-32611    Doc# 50    Filed: 06/20/12    Entered: 06/20/12 11:44:05    Page 10 of
18

holders of allowed claims, Debtor will place into a reserve the amount that would have been distributed to the holders of disputed claims if such claims had been allowed in the full amount claimed. If a disputed claim becomes an allowed claim, Debtor shall immediately distribute to the claimant from the reserve an amount equal to all distributions due to date under the plan calculated using the amount of the allowed claim.

(c)  Cramdown. Pursuant to section 1129(b) of the Bankruptcy Code, Debtor reserves the right to seek confirmation of the Plan despite the rejection of the Plan by one or more classes of creditors.

(d)  Severability. If any provision in the Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

(e)  Governing Law. Except to the extent a federal rule of decision or procedure applies, the laws of the State of California govern the Plan.

(f)  Lawsuits.

Debtor believes that causes of action for fraudulent transfers, voidable preferences, or other claims for relief exist against the following parties:

| Party | Creditor Y/N | Nature of Claim | Amount of Claim | Will Debtor Prosecute Action? Y/N |
|---|---|---|---|---|
| None Known | | | | |
| | | | | |

(g)  Notices. Any notice to the Debtor shall be in writing, and will be deemed to have been given three days after the date sent by first-class mail, postage prepaid and addressed as follows:

(h)  Post-Confirmation United States Trustee Fees. Following confirmation, Debtor shall continue to pay quarterly fees to the United States Trustee to the extent, and in the amounts, required by 28 U.S.C. § 1930(a)(6). So long as Debtor is required to make these payments, Debtor shall file with the

Individual Chapter 11
Combined Plan & Disclosure Statement  -10-
May 4, 2012

court quarterly reports in the form specified by the United
States Trustee for that purpose.


Dated: June 19, 2012


_____
Debtor


 /s/: Kari S. Bowyer
Attorney for Debtor


Individual Chapter 11
Combined Plan & Disclosure Statement —11—
May 4, 2012

## Attorney Certification

I, Kari Silva Bowyer, am legal counsel for the Debtor(s) in the above-captioned case and hereby certify the following: (i) the foregoing plan is a true and correct copy of the Individual Chapter 11 Combined Plan and Disclosure Statement promulgated by the Northern District of California, San Francisco Division, on May 4, 2012 (the "Standard-Form Plan"); and (ii) except as specified below, there have been no alterations or modifications to any provision of the Standard-Form Plan.

The following provisions of the Standard-Form Plan have been altered or otherwise modified.

Pg 1, There is a lump sum payment instead of monthly payments;

Pg 2 & 3, the payments will be made in two parts

I declare that the foregoing is true and correct.  Executed this 18 day of June, 2012.

/s/: *Kari S. Bowyer*

Attorney for Debtor(s)

Individual Chapter 11
Combined Plan & Disclosure Statement −12−
May 4, 2012

## Exhibit 1 - Events That Led To Bankruptcy

Debtor had a successful career in aviation and as a hobby was also involved in woodworking. After Debtor retired from aviation, Debtor became employed with Woodcraft in San Carlos, a company that sells woodworking supplies and also provides woodworking classes. During 2004-2008 the real estate market and new construction in Reno Nevada area was booming. Based on the booming real estate market Debtor saw a real opportunity for a Woodcraft franchise in that area. Debtor therefore took the necessary steps to open Woodcraft in Reno. Woodcraft signed a commercial lease, which was personally guaranteed by the Debtor, Woodcraft received an SBA loan, that debtor also personally guaranteed, and with those funds Debtor thereby opened a Woodcraft franchise in Reno in August 2006. Initially Woodcraft was profitable. However, soon thereafter, the Reno area was afflicted with a crash in the housing market that affected our entire county. Sales slowed, demand for wood materials decreased, until expenses exceeded profit. Debtor attempted to keep Woodcraft afloat by borrowing funds that he personally guaranteed, including taking a loan on his personal residence and having friends invest their own money into the company and seeking a second SBA loan.

In 2009, Woodcraft no longer had the resources to remain open and a Chapter 11 bankruptcy petition was filed. Ultimately, the Chapter 11 was dismissed and Woodcraft was able to liquidate assets and provide some payments to its creditors and ultimately dissolve.

However, Debtor had invested large sums of money in Woodcraft and had also personally guaranteed its debt, including a commercial lease with Auerbach Sierra Meadows LLC ("Landlord"). Debtor was no longer working and could not afford to pay these obligations. To pay his ongoing monthly obligations Debtor took part time employment with Home Depot and Woodcraft in San Carlos. Debtor became behind on his primary mortgage on his personal residence at 623 Upland Rd., Redwood City CA 94062 (the Upland Property). Although the Upland Property in encumbered by a first and second mortgage the fair market value of the Upland Property exceeds its debt. Debtor realized that if the property could be sold, he would be able to reorganize by paying a portion of his creditors with the Upland Property sale proceeds. At the time of filing, Debtor was behind on his first mortgage and facing a foreclosure sale. Debtor filed for bankruptcy protection in an effort to save the house to allow for payments to his creditors.

Case: 11-32611   Doc# 50   Filed: 06/20/12   Entered: 06/20/12 11:44:05   Page 14 of 18

## Exhibit 2 - What Creditors Would Receive if the Case Were Converted to a Chapter 7

Real Property #1: 623 Upland Rd., Redwood City, CA 94062

| Fair Market Value | Liens | | Cost of Sale | Resulting Income Tax | Amt of Exemption | Net Proceeds |
|---|---|---|---|---|---|---|
| 1,400,000 | 1st | 685,940 | 112,000 | 48,750 | 175,000 | 54,610 |
| | 2nd | 323700 | | | | |

Personal Property:

| Description | Liquidation Value | Secured Claim | Amt of Exemption | Net Proceeds |
|---|---|---|---|---|
| Cash | 14,538 | | 12,232 | 2,306 |
| Automobile #1 | 20,855 | 25,448 | | 0 |
| Automobile #2 Road King | 9,000 | | 2,725.00 | 6,275 |
| Automobile #3 Sportster | 2,500 | | | 2,500 |
| Automobile #4 Puch Allstate | 750 | | | 750 |
| Household Furnishings | 35,000 | | 35,000 | 0 |
| Jewelry | 1,000 | | 1,000 | 0 |
| Equipment | 5,000 | | 5,000 | 0 |
| Stocks / Investments | 41,000 | | 11,475 | 29,525 |
| Other Personal Property | 500 | | | 500 |
| TOTAL | | | | 41,586 |

| | | |
|---|---|---|
| Net Proceeds of Real Property and Personal Property | | 96,196 |
| Recovery from Preferences / Fraudulent Conveyances | [ADD] | 0 |
| Chapter 7 Administrative Claims | [SUBTRACT] | |
| Chapter 11 Administrative Claims | [SUBTRACT] | 33,900 |
| Priority Claims | [SUBTRACT] | 512.00 |
| Chapter 7 Trustee Fees | [SUBTRACT] | |
| Chapter 7 Trustee's Professionals | [SUBTRACT] | |
| NET FUNDS AVAILABLE FOR DISTRIBUTION TO UNSECURED CREDITORS | | 61,784 |

| | |
|---|---|
| Estimated Amount of Unsecured Claims | 1,177,805 |
| Percent Distribution to Unsecured Creditors Under Proposed Plan | .1019 |

Case: 11-32611   Doc# 50   Filed: 06/20/12   Entered: 06/20/12 11:44:05   Page 15 of 18

| | |
|---|---|
| Percent Distribution to Unsecured Creditors Under Liquidation Analysis | .05245% |

## Exhibit 3 - Monthly Income and Expenses

| Income | Amount |
|---|---|
| Gross Employment Income | 1850 |
| Gross Business Income | 0 |
| Social Security Income | 2073 |
| Contributions from family and roommate | 4300 |
| Positive Cash Flow on Investment Property (Exhibit 5, Line A) | |
| A. Total Monthly Income | 8223 |

| Expenses | Amount |
|---|---|
| Includes Plan Payments on Secured Claims for Residence and Car | 4987 |
| Payroll Taxes and Related Withholdings | 151 |
| Retirement Contributions (401k, IRA, PSP) | |
| Shelter Expenses (rent/mortgage, insurance, taxes, utilities) (Total Arrearages on Principal Residence are $61,519) | 1637 |
| Household Expenses (food) | 200 |
| Transportation Expenses (car payments, insurance, fuel) | 215 |
| Personal Expenses (e.g. recreation, clothing, laundry, medical) | 200 |
| Alimony / Child Support | |
| Other Expenses | 20 |
| Negative Cash Flow on Investment Property (Exhibit 5, Line B) | |
| B. Total Monthly Expenses | 7410 |

| | |
|---|---|
| C. Disposable Income (Line A - Line B) | 813 |

| Plan Payments Plan Payments Not Included in Calculating Disposable Income | Amount |
|---|---|
| Administrative Claims | 108 |
| Priority Claims | 10 |
| General Unsecured Creditors | |
| Payments on arrears | 300 |

Individual Chapter 11
Combined Plan & Disclosure Statement -15-
May 4, 2012

| D. Total Plan Payments | 418. |
|---|---|

| E. Plan Feasibility (Line C - Line D) (Not feasible if less than zero) | 395 |
|---|---|

Individual Chapter 11
Combined Plan & Disclosure Statement -16-
May 4, 2012

## Exhibit 4 - Effective Date Feasibility

Can the Debtor Make the Effective Day Payments?

| | Amount | Amount |
|---|---|---|
| A. Projected Total Cash on Hand on Effective Date | | 3500 |
| Payments on Effective Date | | |
| Unclassified Claims | | |
| Administrative Expense Claims | | |
| Priority Claims | 10 | |
| Small Claims (Class 2(a)) | 26.59 | |
| U.S. Trustee Fees | 108 | |
| B. Total Payments on Effective Date | | 144.59 |
| C. **Net Cash on Effective Date** (Line A - Line B) (Not feasible if less than zero) | | 3591.41 |

Individual Chapter 11
Combined Plan & Disclosure Statement -17-
May 4, 2012